```
USDC-SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:_____
DATE FILED:___ 2 7 201
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
  SOLO OBI OMOR,                :

                Plaintiff,   :

           -v-           :

CITY OF NEW YORK, HRA POLICE  :
OFFICER THERESA GREEN, SHIELD  :
1929, HRA POLICE LIEUTENANT EDGAR :
ROSARIO, and HRA POLICE SERGEANT  :
DEBORAH DARRISAN-METE, SHIELD  :
601,                    :

           Defendants. :
------------------------------------------------------ X

No. 13-CV-2439 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    *Pro se* Plaintiff Solo Obi Omar brings this action against Defendants City of New York ("City"), Sergeant Deborah Darrison-Mete, Lieutenant Edgar Rosario, and Police Officer Theresa Green claiming violations of the First, Fourth, Fifth, Eighth, Tenth, Thirteenth, and Fourteenth Amendments of the United States Constitution.  At the core of these claims is Plaintiff's dissatisfaction with the City, which he blames for his unemployment and status in society.  Plaintiff also alleges various claims relating to his April 10, 2013 arrest, which occurred after he refused to leave the Human Resources Administration ("HRA") when he was denied the amount of financial assistance to which he felt entitled.  Before the Court is Defendants' motion for summary judgment.  For the reasons set forth below, the motion is granted in its entirety.

## BACKGROUND[1]

On April 10, 2013, Plaintiff visited the HRA in Bronx, New York, seeking financial assistance to pay his rent of $892.93 per month. (Defendants' L. Civ. R. 56.1 Statement ("Def. 56.1") ¶¶ 1, 2.)  HRA staff informed Plaintiff that the HRA could provide Plaintiff with only $215.00 in assistance. (Id. ¶ 2.)  Not satisfied with that amount, Plaintiff refused to give up his seat or leave the premises after HRA staff asked him to do so. (Id. ¶¶ 3-5.)  The HRA supervisor called security and Sergeant Darriesaw-Mete and Officer Green arrived to assist the staff. (Id. ¶ 6.)  Refusing still to leave the premises, Plaintiff was placed under arrest for trespass, handcuffed, and escorted by the officers to an office on the ground floor of the HRA building. (Id. ¶¶ 8-9.)

At around 5:00 p.m., Plaintiff asked the officers to use the men's restroom. (Id. ¶ 11.)  The officers, both female, told him that they would find a male officer to escort him to the restroom. (Id. ¶ 12.)  Plaintiff purportedly has poor bladder control from his pre-existing diabetes and, approximately 30 minutes after asking to use the restroom, he urinated on himself. (Id. ¶ 13.)  At approximately 6:00 p.m., Lieutenant Rosario, a male officer, arrived to escort Plaintiff to the restroom. (Id. ¶ 15.)

While in the restroom, Plaintiff asserts that Lieutenant Rosario probed Plaintiff's anus with his finger to search for drugs; specifically, he claims that he felt "something sharp" go in his anus and that he did not see any other object in the area that could have caused the pain. (Id. ¶¶ 15-16; Omor Dep. at 52.)

When Plaintiff returned from the restroom, Sergeant Darriesaw-Mete informed Lieutenant Rosario that Plaintiff was the subject of an outstanding arrest warrant for disorderly conduct. (Id. ¶¶ 18, 20.)  Lieutenant Rosario then transported Plaintiff to New York County Criminal Court,

---

[1] Except as otherwise noted, the following facts are taken from Defendants' L. Civ. R. 56.1 Statement and are supported by citations to the record.

where Plaintiff pleaded guilty to the disorderly conduct offense before the Hon. Erika Edwards. (Id. ¶¶ 19-20.)

As a result of the arrest, Plaintiff was handcuffed for a total of four to five hours; he claims that this caused him pain and made his wrists swell. (Id. ¶¶ 21-24.)

Plaintiff also asserts that certain property he had with him at the time of the arrest—ink pens, highlighters, and a passport—was confiscated and never returned to him. (Id. ¶ 25.) He concedes, however, that he made no effort to retrieve the property after his arrest. (Id. ¶ 26.)

In addition to his claims regarding the arrest, Plaintiff also faults the City for not providing him with a job or training the HRA officers, and claims that the City violated his Thirteenth Amendment rights because no matter how "educated . . . how high [his] level" was, because he was an African-American, the City would provide him only a government benefits card. (Id. ¶¶ 27-28; Omor Dep. at 94.) He asserts that this treatment suggested that the City considered him as "not an American." (Omor Dep. at 94.)

## I.    Procedural History

Plaintiff filed this action *in forma pauperis* on April 11, 2013. (Dkt. 1.) Plaintiff filed an Amended Complaint on April 29, 2014 (Dkt. 7), and a Second Amended Complaint ("SAC") on July 22, 2013 (Dkt. 15). This is the third of six actions that Omor filed in this district during the last ten years, and the second of three § 1983 actions he filed in 2013.[2]

At the close of discovery in this case, Defendants filed the instant motion, seeking summary judgment on Plaintiff's claims for false arrest, deliberate indifference to medical needs, excessive force, unlawful search, and deprivation of property, and, as against the City, for failure to train and

---

[2] See Omor v. Special Sec. Inc., No. 06 Civ. 7853 (SAS) (employment discrimination case; closed, Nov. 14, 2007); Omor v. New York State et al., 13 Civ. 1709 (LAP) (§ 1983 case; dismissed as frivolous, May 21, 2013); Omor v. Bloomberg, 13 Civ. 6741 (LAP) (§ 1983 case; dismissed as frivolous, Oct. 15, 2013); Omor v. Sera Sec. Servs. LLC et al., 14 Civ. 2602 (ALC) (employment discrimination case; motion to dismiss pending); Omor v. Libery Tax Servs., 14 Civ. 2662 (AKH) (employment discrimination case).

other miscellaneous allegations.  (Dkt. 46.)[3]  In support of their motion, Defendants submitted excerpts of Plaintiff's deposition testimony as well as New York City Criminal Court records. (Nam Decl. Exs. B, C.)  For reasons unknown (and somewhat perplexing) to the Court, however, Defendants did not submit affidavits or testimony from the individual Defendants.

Plaintiff submitted a sworn affidavit and memorandum of law, as well as copies of excerpts from his own deposition transcript.  (Dkt. 52.)  Although Plaintiff did not submit a responsive L. Civ. R. 56.1 statement with his opposition, courts afford *pro se* litigants "special solicitude," particularly at the summary judgment stage.  Jackson v. Fed. Exp., 766 F.3d 189, 195 (2d Cir. 2014) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)).  Accordingly, a *pro se* plaintiff is entitled to receive notice that he or she must respond to a defendant's motion for summary judgment with evidence, or risk the dismissal of his claims.  See L. Civ. R. 56.2; Ruotolo, 28 F.3d at 8.  Here, Plaintiff received the required notice under L. Civ. R. 56.2 (Dkt. 47), but nonetheless failed to submit a responsive statement or otherwise contravene Defendants' statement in his opposition.  Thus, the facts in Defendants' statement may be deemed admitted.  See Fed.R.Civ.P. 56(e)(2); Jackson, 766 F.3d at 194 (citing Jones v. Lamont, No. 05 Civ. 8126 (LAK), 2008 WL 2152130, at *1 (S.D.N.Y. 2008), aff'd, 379 Fed. App'x 58 (2d Cir. 2010) (granting summary judgment in *pro se* § 1983 case)).  In light of Plaintiff's *pro se* status, however, the Court will liberally construe his submissions to raise any disputes or discrepancies they suggest as to Defendants' portrayal of the facts.

Plaintiff does not specify the legal bases for his claims in either the SAC or his Opposition to the Motion for Summary Judgment; nor does he contest Defendants' generous reading of the

---

[3] Defendants' motion papers interchangeably refer to the motion as one for "partial summary judgment" and for "summary judgment."  Because Defendants appear to move for summary judgment on the entire SAC, however, and because there are no genuine issues of material fact remaining for trial, the references to "partial summary judgment" appear to be in error.

4

SAC. The Court will therefore construe the claims in the SAC consistent with Defendants' interpretation.

Plaintiffs' submissions, moreover, contain virtually no substantive analysis; his arguments are often nonsensical and the submissions are replete with inappropriate references to the parties and counsel of record in this case. Plaintiff's Affidavit, for instance, not only contains extraneous references to Elliot Spitzer, Dominique S. Kahn, China, and the Garden of Eden, among others, but also includes crude comments and baseless insults directed at Defendants' counsel. Similarly, Plaintiff's Memorandum of Law veers illogically between brief discussions of constitutional claims—including but not limited to the claims asserted here—and completely unrelated topics, such as excrement and the sexual history of individuals associated with this case. Therefore, while the Court has liberally construed Plaintiff's submissions, their utility is limited.

## LEGAL STANDARD

Summary judgment is only appropriate where the Court concludes "after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "When a plaintiff proceeds pro se, the court must construe his submissions liberally and interpret them 'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

Once the moving party has shown that there is no genuine dispute of material fact remaining, the non-movant must "set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotations omitted). The non-movant may not, however, "rely on mere speculation or conjecture as to the true nature

5

of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citing Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)). Rather, the non-movant "must offer some hard evidence showing that its version of the events is not wholly fanciful." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998)); see also Aziz Zarif Shabazz v. Pico, 994 F.Supp. 460, 470 (S.D.N.Y. 1998) (Sotomayor, J.).

"[I]n "the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." Jeffreys, 426 F.3d at 554. In such case, the court may properly evaluate whether a reasonable juror could have credited the plaintiff's testimony. Id. at 551; Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 105-06 (2d Cir. 2011). Even in these circumstances, however, "the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." Id. at 554 (citing Fischl v. Armitage, 128 F.3d 50, 56 (2d Cir. 1997)).

## DISCUSSION

### I.    False Arrest

Defendants argue that Plaintiff's false arrest claim fails because there was probable cause to arrest him for trespass and that, in addition, once the officers discovered Plaintiff's open arrest warrant, there was also probable cause to arrest him on that basis. (Defendants' Mem. of Law in Support of Motion for Summary Judgment ("Def. Mem.") at 6.) The Court agrees.

"The existence of probable cause to arrest . . . 'is a complete defense to an action for false

6

arrest,' whether that action is brought under state law or under § 1983." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. In conducting a probable cause analysis, a court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and emphasis omitted).

## A. Probable Cause to Arrest for Trespass

Under New York law, "a person is guilty of trespass when he knowingly enters or remains unlawfully in or upon a premises." N.Y.P.L. § 140.05. Where, as here, the premises are generally open to the public, a person "remains unlawfully" if "he defies a lawful order not to . . . remain personally communicated to him by the owner of such premises or other authorized person." Id. § 140.00(5). Thus, to establish probable cause for trespass, Defendants must show: (1) that there was a lawful order excluding Plaintiff from the premises, (2) that the order was communicated to Plaintiff by a person with the authority to make the order, and (3) that Plaintiff defied the order. Carpenter v. City of New York, 984 F.Supp.2d 255, 265 (S.D.N.Y. 2013) (citing People v. Munroe, 853 N.Y.S.2d 457, 458 (N.Y. Sup. App. Term 2007)).

Probable cause to arrest may be established as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." Faruki v. City of New York, No. 10 Civ. 9614 (LAP), 2012 WL 1085533, at *4 (S.D.N.Y. Mar. 30, 2012), aff'd, 517 F. App'x 1 (2d Cir. 2013). Plaintiff admits that both HRA staff and an HRA supervisor asked Plaintiff to leave the premises because other people were waiting to be assisted, and that, despite their requests, he

7

refused to leave. (Def. 56.1 ¶¶ 4-6; Omor Dep. at 35-37.)  Plaintiff further concedes that these facts were communicated to the officers when they arrived. (Def. 56.1 ¶ 7; Omor Dep. at 40.) Because Plaintiff does not dispute the relevant facts regarding the incident or the officers' knowledge of his conduct, Defendants have established as a matter of law that there was probable cause to arrest Plaintiff for trespass. See Carpenter, 984 F.Supp.2d at 266-67; Feruki, 517 F. App'x at 2 (affirming summary judgment for Defendants where store recording captured employee asking plaintiff to leave store).

### B.  Probable Cause to Arrest Based on Bench Warrant

Defendants further argue that there was probable cause to arrest Plaintiff when Sergeant Darrisaw-Mete discovered that he had an outstanding arrest warrant for disorderly conduct. (Def. Mem. at 10.) Although the officers did not know about the warrant when the officers first removed Plaintiff from the HRA office and placed him under arrest, the Court agrees that there was an additional basis for finding probable cause once the warrant was discovered.[4]

The facts regarding the warrant are undisputed.  Plaintiff admits that he was taken to New York County Criminal Court after Sergeant Mete told Lieutenant Rosario about the warrant. (Omor Dep. at 62.)  Furthermore, court records establish that Plaintiff was presented before the Hon. Erika Edwards on that warrant, summons number 2009SC006648. (Nam Decl. Ex. C, Tr. of April 10, 2013 New York Cnty. Crim. Ct. Proceedings.)  During that proceeding, Plaintiff pleaded guilty to disorderly conduct under N.Y.P.L. § 240.20 and was sentenced to time served. (Id.)

Probable cause exists to arrest when an officer learns of an open arrest warrant. See e.g. Martinez v. City of New York, 340 F. App'x 700, 701 (2d Cir. 2009); United States v. Miller, 265 F. App'x 5, 7 (2d Cir. 2008).  There is no dispute that there was an open warrant for Plaintiff at

---

[4] This additional basis for probable cause does not cover the period of time between Plaintiff's removal from the HRA office and the discovery of the warrant.

8

the time of his arrest and that there was thus probable cause to arrest him on that basis. Moreover, Plaintiff is precluded from challenging his arrest on the basis of the outstanding warrant because he pleaded guilty to the underlying disorderly conduct offense; his false arrest claim would therefore necessarily—and unlawfully—"imply the invalidity of [that] conviction." See Poventud v. City of New York, 750 F.3d 121, 132 (2d Cir. 2014) (*en banc*) (citing Heck v. Humphrey, 512 U.S. 477, 487 (1994)). See also Wilkinson v. Dotson, 544 U.S. 74, 81 (2005) ("Heck specifies that a [plaintiff] cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence."); Rodriguez v. Vill. of Ossining, 918 F. Supp.2d 230, 241 (S.D.N.Y. 2013) (discussing false arrest claim). Accordingly, Plaintiff's false arrest claim fails as a matter of law.

## II.    First Amendment Claim Based on Arrest

To the extent Plaintiff asserts that the arrest violated his First Amendment rights (see Omor Dep. at 90), that claim also fails.[5] Although he testified at his deposition that Defendants violated his right to "peacefully assemble" at the HRA office, Plaintiff has not specified how the Defendant officers prevented him from exercising his First Amendment rights. Assuming that his claim, liberally construed, asserts that the arrest was an unlawful restriction on his right to protest the HRA's financial assistance, such claim cannot succeed. While the HRA office is a local government office open to the public, it is not a public forum "that has as a principal purpose . . . the free exchange of ideas." Int'l Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 679-80 (1992) (distinguishing between non-public forum government property where members of the public are freely allowed to enter, and public forum intentionally created for public discourse);

---

[5] Defendants address this argument only in a footnote to their probable cause discussion (Def. Mem. at 6, n.2); because Plaintiff testified about his First Amendment claim, however, the Court provides a more detailed analysis.

Perry v. McDonald, 280 F.3d 159, 166 (2d Cir. 2001).  Restrictions on speech in a non-public forum—including those based on subject matter and speaker identity—are lawful "so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." Byrne v. Rutledge, 623 F.3d 46, 54 (2d Cir. 2010) (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 806 (1985)).  Here, there is no evidence that Defendants' actions were unreasonable in light of the purposes served by the government building, or motivated by the content of Plaintiff's expressive speech. See U.S. v. Murtari, 120 F. App'x 378, 380 (2004) (finding no First Amendment violation where criminal defendant was arrested for trespass and disorderly conduct at Syracuse Federal Building).[6]

Similarly, there is no evidence that Defendants arrested Plaintiff in retaliation for the exercise of his First Amendment rights.  To establish such a claim, Plaintiff must show: (1) that he engaged in protected speech, (2) that there was a causal connection between Plaintiff's speech and an adverse action taken by Defendants, and (3) that such Defendants' actions effectively chilled the exercise of Plaintiff's First Amendment rights. Williams v. Town of Greenburgh, 535 F.3d 71, 76-77 (2d Cir. 2008).  Assuming *arguendo* that the first two prongs are met—which is not at all clear—Plaintiff's retaliation claim nonetheless fails on the third prong because he suffered no cognizable injury.  To satisfy this prong, Plaintiff must put forth evidence that (1) Defendants silenced him or (2) their actions had some "actual, non-speculative chilling effect" on his speech. Id. at 78 (citing Colombo v. O'Connell, 310 F.3d 115, 117 (2d Cir. 2002)).  But as in Williams,

---

[6] Significantly, the record establishes only that the Officers arrested Plaintiff for trespass on the basis of the information given to them by the HRA staff—there is no evidence that the officers believed, or had reason to believe, that Plaintiff's refusal to leave the HRA office was an act of public protest or other expressive speech. (See Omor Dep. at 40-41.)  Furthermore, in contrast to cases in which a restriction has been found unreasonable, there is no indication in the record that Plaintiff was permanently barred from the government office. See Huminkski v. Corsones, 396 F.3d 53, 92 (2d Cir. 2004) (finding notice against trespass unreasonable where it prohibited "indefinitely any and all expressive activities" in and around state courthouses).

Plaintiff "has not alleged facts indicating that [Defendants] deprived [him] of his constitutionally protected right to free speech," and he has not "produced any evidence showing that defendants' actions chilled his speech or otherwise prevented him from speaking." Id. (affirming summary judgment for Defendants where plaintiff was arrested for trespass at town community center where he was previously employed, but did not produce any evidence of chilling effect from defendants' conduct); see also Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).[7]

Consequently, Plaintiff's First Amendment claim fails as a matter of law.

## III. Deliberate Indifference

Plaintiff further asserts that after his arrest, he urinated on himself because Sergeant Darrisaw-Mete and Officer Green denied him access to the restroom for approximately one hour. (Omor Dep. at 45-50.) Although Plaintiff does not assert that he experienced any pain as a result of the delay, he claims that he lost control of his bladder because of his pre-existing diabetes. (See id.) To the extent that Plaintiff seeks to assert a deliberate indifference claim on this basis, such claim fails as a matter of law.

To set forth a claim of deliberate indifference to medical need, Plaintiff must show: (1) that "the alleged deprivation [was] sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exist[ed]," and (2) that the official acted with a "sufficiently culpable state of mind." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (internal citations and quotations omitted); see also, Caiozzo v. Koreman, 581 F.3d 63, 71-72 (2d Cir. 2009) (holding that the same standard applies to claims by convicted prisoners under the

---

[7] In Williams, the Court also affirmed summary judgment on the plaintiff's false arrest claim, explaining that there was probable cause for the arrest because a reasonable officer could conclude that the plaintiff, who had been expelled from the community center and returned without obtaining permission, was trespassing. 535 F.3d at 79. See also Curley, 268 F.3d at 69-70, 73 (affirming summary judgment on false arrest claim and finding no causal connection for First Amendment claim because there was probable cause for the arrest).

Eighth Amendment and pretrial detainees' claims under the Fourteenth Amendment).

Here, the record is bereft of any evidentiary support for either prong of a deliberate indifference claim. First, although Plaintiff's diabetes qualifies as a "sufficiently serious" medical condition, see Edmonds v. Central N.Y. Psychiatric Center, No. 10 Civ. 5810 (DAB), 2011 WL 3809913 at *4 (S.D.N.Y. 2011), he has not introduced any evidence showing that the one hour delay in his access to a restroom worsened or threatened to worsen his condition in any meaningful way. Although Plaintiff asserts that he was temporarily uncomfortable, he admits that he was not in any pain, and does not claim that the one hour delay caused, or had the potential to cause, any lingering effects. (See Omor Dep. at 50.) These facts do not establish a sufficiently serious deprivation. See Smith v. Carpenter, 316 F.3d 178, 188 (2d Cir. 2003) (explaining that although plaintiff is not required to show actual physical injury, the absence of present physical injury is often "probative in assessing the risk of future harm"); Rodriguez v. City of New York, 802 F. Supp. 2d 477, 482 (S.D.N.Y. 2011) (awarding summary judgment to Defendants where Plaintiff introduced no evidence that his medical condition worsened).

Secondly, Plaintiff has provided no evidence that the officers acted with the requisite state of mind. To establish deliberate indifference, Plaintiff must show that Defendants "'kn[ew] of and disregard[ed] an excessive risk to [Omor's] health or safety' and that [they were] 'both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w the inference.'" Caiozzo, 581 F.3d at 72 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Here, there is no evidence that the officers knew of Plaintiff's condition, or that a one hour delay in Plaintiff's access to the bathroom would create a "substantial risk of serious harm." Although Plaintiff testified that he told the officers about his bladder problem, he did not tell them he had diabetes. (Omor Dep. at 47.) Moreover, there is no indication that the officers disregarded Plaintiff's request. Indeed, Plaintiff testified that when he asked to use the restroom,

12

the female officers explained that they could not take him, but that they would call for assistance from a male officer—which they then did. (Id. at 49; Def. 56.1 ¶¶ 12, 14.)

From these facts, no reasonable juror could conclude that the officers knowingly disregarded Plaintiff's serious medical needs. Summary judgment is thus appropriate on this claim.

## IV.     Excessive Force

Plaintiff also asserts that Defendants subjected him to "excessive force" or "cruel and unusual punishment" by handcuffing him from the time of his arrest to his presentment in criminal court—approximately four to five hours in total. (Def. 56.1 ¶ 21; Omor Dep. at 93.)

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014) (citations omitted). To determine reasonableness, the Court must balance the intrusion against the governmental interests at stake, looking to the "totality of the circumstances." Id. The inquiry is made from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)). Merely "*de minimis* uses of physical force" are not of a constitutional dimension, "provided that the use of force is not a sort repugnant to the conscience of mankind." Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010).

Plaintiff cannot establish an excessive force claim based merely on the fact that he was handcuffed after his arrest. "Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005). Although routine, however, overly tight handcuffs may constitute excessive force in some circumstances; accordingly, courts may consider evidence that: "1) the handcuffs were unreasonably tight; 2) the

13

defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Lynch ex rel. Lynch v. City of Mount Vernon, 567 F.Supp.2d 459, 468 (S.D.N.Y. 2008) (quoting Esmont, 371 F.Supp.2d at 215) (emphasis omitted). Courts in this Circuit have generally found that handcuffing does not suffice for an excessive force claim unless it causes some injury beyond temporary discomfort or bruising. Lynch ex rel. Lynch, 567 F.Supp.2d at 468-69 (collecting cases); Sachs v. Cantwell, 10 Civ. 1663 (JPO), 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012) (same).

Here, Plaintiff has made inconsistent statements about his injuries: he asserts that the handcuffs caused temporary "redness and swelling" (Omor Dep. at 50-51), and testified that he "could have had a heart attack and dropped dead" from the handcuffs (id. at 93), but he also testified that he was not claiming any physical injuries from his arrest (id. at 100). In any event, Plaintiff has never claimed that he suffered any serious or permanent injury from the handcuffs. In addition, there is no indication that he told any of the officers that the cuffs were too tight. In fact, he explained at his deposition why he failed to tell the officers that he was in pain: "But immediately I was, as a man, able to be in pain, to sit there with handcuffs, sitting down, and that's it . . . I wasn't complaining of the pain." (Id. at 51.) Without knowledge of Plaintiff's discomfort, the officers could not have responded to his complaints, and thus cannot be held liable for unreasonably ignoring them. See Esmont, 371 F.Supp.2d at 215 (granting summary judgment where there was no evidence that plaintiff asked for his handcuffs to be loosened).

The length of time Plaintiff was handcuffed—by his assertion, four to five hours—similarly does not render the officers' conduct unreasonable. Lieutenant Rosario took Plaintiff directly to court from the HRA Office and he was released later that night. There is no evidence that the decision to keep Plaintiff handcuffed during that period was objectively unreasonable or even unusual. See Lynch, 567 F.Supp.2d at 469; Bender v. City of New York, No. 09 Civ. 3286 (BJS),

14

2011 WL 4344203, at *6 (S.D.N.Y. Sept. 14, 2011) (dismissing excessive force claim where plaintiff alleged six hours of discomfort).

For these reasons, Plaintiff's excessive force claim fails as a matter of law.

## V.    Deprivation of Property

Plaintiff's contention that certain items belonging to him—pens, highlighters, and his passport—were unlawfully confiscated and not returned does not constitute a cognizable § 1983 claim. To the extent he asserts a due process claim for deprivation of property, such claim is barred where the state provides a meaningful post-deprivation remedy under state law. Hudson v. Palmer, 468 U.S. 517, 533 (1984). This rule applies even to intentional deprivations of property by state actors. Id. New York, where the arrest occurred, provides various state law remedies that would fully compensate Plaintiff for his property loss, including actions for negligence, conversion, or replevin against Defendants. See, e.g., Toliver v. City of New York, No. 10 Civ. 5806 (SHS) (JCF), 2013 WL 6476791, at *7 (S.D.N.Y. Dec. 10, 2013), report and recommendation adopted, 2014 WL 549402 (Feb. 11, 2014); Dove v. City of New York, No. 99 Civ. 3020 (DC), 2000 WL 342682, at *3 (S.D.N.Y. March 30, 2000). Here, Plaintiff has not sought any available state remedy; in fact, he has not made any attempt whatsoever to retrieve his property. (Def. 56.1 ¶ 26.) Accordingly, this claim must fail. See, e.g., Toliver, 2013 WL 6476791 at *7.

## VI.    Search by Lieutenant Rosario

Plaintiff also asserts that Lieutenant Rosario "dip[ped] his finger into [Plaintiff's] anal" after escorting him to the bathroom at the HRA Office. (Def. 56.1 ¶ 15.) Although the Court recognizes that such an allegation raises serious Fourth Amendment concerns, there is not a sufficient evidentiary basis for the claim to proceed to trial. At his deposition, Plaintiff claimed that the officer was "[s]earching for drugs," and speculated that the pain he felt must have been from Lieutenant Rosario's finger because he "did not see any other object" around, such as a

15

"chair," that could have caused the pain. (Omor Dep. at 55, 58.) Plaintiff does not claim that he was able to witness Lieutenant Rosario physically search him, nor does he provide any additional evidence that the search even occurred. He does not assert, for instance, that he complained about the search to the other officers at the HRA Office or to anyone else; nor does he introduce any evidence—or even claim—that he sought medical treatment after he was released later that night. Plaintiff's summary judgment submissions offer no additional clarification. Although he refers numerous times to illegal searches (see, e.g., Pl. Mem. at 6, 9, 15), the surrounding discussion is unintelligible and does not contain any specific references to the bathroom incident.

In sum, Plaintiff has introduced no "hard evidence" of his claim against Lieutenant Rosario, and instead relies entirely on his unsubstantiated assertions. See Jeffreys, 426 F.3d at 554. "Although a district court generally should not weigh evidence or assess the credibility of witnesses," Rojas, 660 F.3d at 104-05 (internal quotations and citation omitted), in view of the totality of Plaintiff's statements and submissions—which, as discussed above, are generally incoherent, contradictory, illogical, and unsupported—his testimony is insufficient by itself to establish a genuine dispute for trial, see id. at 106 (to "require district courts to allow parties to defeat summary judgment simply by testifying to the allegations in their pleadings . . . would license the mendacious to seek windfalls in the litigation lottery") (internal quotations omitted); Garnica v. Edwards, No. 13 Civ. 3943 (AKH), --F.Supp.3d--, 2014 WL 7180395, at *5 (S.D.N.Y. Dec. 11, 2014). Thus, the Court concludes that the claim fails because "[n]o reasonable person would undertake the suspension of disbelief necessary to give credit to [Plaintiff's] allegations." Jeffreys, 426 F.3d at 555 (quoting Schmidt v. Tremmel, No. 93 Civ. 8588 (JSM), 1995 WL 6250, at *3 (S.D.N.Y. Jan. 6, 1995) (dismissing claims of illegal searches by federal corrections officers)).

16

## VII.   Claims Against the City

Finally, Plaintiff's claims against the City also fail as a matter of law.  Plaintiff testified that he sued the City for "not . . . act[ing] on [his] behalf as recommended by the Tenth [and Fifth Amendments]."  (Def. 56.1 ¶ 27.)  When asked to further specify his allegations, he asserted that that the City violated his rights by (1) not providing him with a job, and (2) failing to train City employees (including HRA officers), (3) that the City did not "look[] at him as an American," and (4) that the City violated his Thirteenth Amendment rights because "no matter how you educated . . . how high your level is, as an African-American," the City offered him only a disability benefits card.  (Omor Dep. at 87, 94.)[8]  Plaintiff provides no evidence or further clarification of these claims; as with the claims discussed above, he relies entirely on his own unsubstantiated assertions.

To state a constitutional claim for relief against the City, or any other municipal body, a plaintiff must allege that his constitutional injury occurred as a result of an "official municipal policy."  Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011).  Because municipalities "are responsible only for their *own* illegal acts," they cannot be held "vicariously liable under § 1983 for their employees' actions."  Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (citations omitted).  Official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Id. (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691 (1978)).  Plaintiff cannot establish municipal liability in this case because he has not established a constitutional violation and he does not assert that any of the violations he alleges were caused by particular City policies.  Plaintiff's claims against the City thus fail.[9]

---

[8] Of these allegations, only Plaintiff's failure to train claim is included in the SAC.  (See SAC at 5.)

[9] To the extent that the miscellaneous assertions contained in Plaintiff's summary judgment submissions constitute any additional claims against the City, these claims are also meritless.

17

## CONCLUSION

For the reasons stated above, Defendants are granted summary judgment on the entirety of Plaintiff's Second Amended Complaint.[10]  The Clerk of the Court is directed to close items 46 and 54 on the docket and to close the case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  Furthermore, because Plaintiff has filed five other actions in this Court, two of which were dismissed as frivolous, Omor v. New York State et al., 13 Civ. 1709 (LAP) (§ 1983 case; dismissed May 21, 2013); Omor v. Bloomberg, 13 Civ. 6741 (LAP) (§ 1983 case; dismissed Oct. 15, 2013), he is hereby warned that further duplicative or frivolous litigation in this Court will result in an Order barring Plaintiff from filing new actions without prior permission.  See 28 U.S.C. § 1651.

SO ORDERED.

Dated:      February 27, 2015
             New York, New York

Ronnie Abrams
United States District Judge

---

[10] Because there is no issue remaining for trial, Plaintiff's motion for a jury trial is denied.

18